IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando Division

UNITED STATES OF AMERICA f/u/b/o
JJS CONSTRUCTION GROUP LLC,

Plaintiff,

vs. Case No.:

AXIS INSURANCE COMPANY,

Defendant,
_________________________________/

# **COMPLAINT**

Plaintiff United States of America for the use and benefit of JJS Construction Group LLC ("JJS") sues Defendant AXIS Insurance Company ("Surety"), and states:

## **Parties, Jurisdiction, and Venue**

1. This is an action under the Miller Act, 40 U.S.C. §§ 3131-3134, to recover amounts due JJS for labor and materials furnished in carrying out a bonded federal construction project.

2. JJS is a Florida limited liability company engaged in the construction business, with its principal place of business in Florida.

3. Surety is an Illinois corporation engaged in the insurance and surety business that issues construction bonds for projects in Florida, including the payment bond at issue here.

4. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1352 and 40 U.S.C. § 3133.

5. Venue is proper in this Court, Orlando Division, under 40 U.S.C. § 3133(b)(3), because the bonded contract was to be performed in Orange County, Florida.

**General Allegations**

6. The United States Department of Veterans Affairs ("Owner") awarded Contract No. 36C77624C0168, dated August 29, 2024, to CDEEM, Co. ("Prime Contractor") for the expansion of the Lake Nona Primary Care Facility (East), Project No. 675-100, in Orange County, Florida ("Project").

7. On September 5, 2024, Surety issued a payment bond on Standard Form 25A bearing Bond No. DUA002197, with Prime Contractor as principal and the United States as obligee ("Payment Bond"). A copy of the Payment Bond and accompanying power of attorney is attached as Exhibit A.

8. The Payment Bond secures prompt payment to persons having a direct relationship with Prime Contractor or its subcontractors for furnishing labor or materials in prosecution of the work provided for in the bonded prime contract and authorized modifications.

9. On May 27, 2025, Prime Contractor and JJS entered into a written subcontract covering multiple trades, water-intrusion repairs, waterproofing,

demolition, and related work at Lake Nona East and West. A copy is attached as Exhibit B.

10. On July 14, 2025, Prime Contractor and JJS entered into a further written agreement for additional work, including East precast demolition and remediation and certain West work. Executed portions of that agreement are attached as Exhibit C.

11. On September 3, 2025, Prime Contractor and JJS entered into a written subcontract for Division 3 concrete work at the Project, including related crane and shoring work. A copy is attached as Exhibit D. The agreements described in paragraphs 9 through 11 are referred to collectively as the "Subcontracts."

12. JJS contracted directly with Prime Contractor under the Subcontracts. This action concerns the labor and materials furnished for the East prime contract identified above, including the East portions of agreements that also address Lake Nona West.

13. JJS furnished labor and materials in prosecution of the Project, including water-intrusion repairs, waterproofing, demolition and precast removal, concrete and related shoring work, surveying, and structural-bracket work, together with additional and changed work, performed at CDEEM’s direction.

14. In furnishing that work, JJS incurred costs for labor, materials, subcontractors, equipment, and specialized shoring. JJS has not been fully

compensated for its Project work and the additional costs incurred in performing that work at CDEEM's direction.

15. To the extent any portion of JJS's Project work is determined to have been furnished pursuant to a contractual relationship with Smart Wallet Corp., a subcontractor of Prime Contractor, JJS alternatively seeks recovery for that work under the Payment Bond as a person having a direct contractual relationship with a subcontractor of Prime Contractor.

16. JJS submitted payment applications and invoices for its Project work. Although Prime Contractor made partial payments, earned compensation remains unpaid.

17. JJS repeatedly demanded payment. On February 3, 2026, JJS gave Prime Contractor written notice of overdue payments and its intention to suspend work if the nonpayment was not cured. Prime Contractor failed to pay JJS in full.

18. By letter dated May 20, 2026, Prime Contractor purported to terminate the September 3, 2025 concrete and shoring subcontract for cause, citing subcontract bonding and staffing issues. A copy of the notice is attached as Exhibit E.

19. Prime Contractor had previously advised JJS that subcontract payment and performance bonds were not required. JJS disputes that the asserted bonding and staffing grounds justified termination for cause. Prime Contractor's termination was wrongful.

20. Prime Contractor's nonpayment and wrongful termination caused JJS to incur additional costs in performing, protecting, suspending, and demobilizing its Project work, for which JJS has not been fully compensated.

21. The unpaid amounts include earned compensation for the work furnished, additional and changed work, and additional actual Project performance costs, including costs resulting from Prime Contractor's nonpayment and wrongful termination, to the extent recoverable under the Payment Bond. The amount justly due will be established by the evidence.

22. JJS seeks recovery of its unpaid Project compensation and covered costs after application of all proper payments and credits, without duplicate recovery.

23. JJS, through its prior counsel, asserted a written payment-bond claim in correspondence dated July 14, 2026, addressed to Surety and Prime Contractor through its counsel. The amounts justly due JJS under the Payment Bond remain unpaid.

24. JJS has retained the undersigned counsel to prosecute this action. All statutory conditions precedent to this action on the Payment Bond have occurred or been satisfied.

**Count I – Action on the Miller Act Payment Bond**

25. JJS incorporates paragraphs 1 through 24 as though fully set forth herein.

26. JJS furnished labor and materials in carrying out the work provided for in the bonded prime contract and its modifications, in good faith and with the reasonable belief that the labor and materials were intended for use on the Project.

27. JJS is within the class of persons protected by the Payment Bond and the Miller Act by virtue of its direct Subcontracts with Prime Contractor and, alternatively as alleged above, its contractual relationship with Prime Contractor's subcontractor.

28. JJS has not been paid in full within 90 days after the date on which it performed the last of the labor or furnished the last of the materials for which this action is brought.

29. This action is brought within one year after the date on which JJS last performed labor or furnished materials in carrying out the work provided for in the bonded prime contract.

30. The Payment Bond obligates Surety to pay the amounts justly due for JJS's covered labor and materials. Those amounts remain unpaid, and Surety is liable to JJS for the unpaid earned compensation and additional covered costs alleged above, in an amount to be proved.

WHEREFORE, JJS demands judgment against AXIS Insurance Company for the unpaid compensation and additional covered Project costs alleged above, in an amount to be proved, after all proper payments and credits; prejudgment and postjudgment interest; taxable costs; and all other relief the Court deems just and proper.

Respectfully submitted,

**KIRWIN NORRIS, P.A.**
By: *Brian P. Kirwin, Esq.*
Brian P. Kirwin, Esq.
Florida Bar No. 867799
840 S. Denning Drive, Suite 200
Winter Park, Florida 32789
Telephone: (407) 740-6600
Facsimile: (407) 740-6363
bpk@kirwinnorris.com
rcr@kirwinnorris.com
*Counsel for JJS Construction Group LLC*